## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**LAUREN KASSEL**

*Plaintiff,*

vs.

**VILLANOVA UNIVERSITY**
**d/b/a The Inn at Villanova**

*Defendant.*

CIVIL ACTION

NO. 2:22-cv-05044-NIQA

## PLAINTIFF'S BRIEF RELATED TO DAMAGES

Plaintiff, by and through her undersigned counsel, hereby states as follows in support of her request for damages at trial under the Americans with Disabilities Act ("ADA") and Pennsylvania's Human Relations Act ("PHRA") in accordance with this Court's June 5, 2025 Trial Scheduling Order (ECF Doc. 30).

### I.    Legal Argument[1]

Ms. Kassel has brought claims for disability discrimination, retaliation, and failure to accommodate under the ADA and PHRA. *See* ECF Doc. 10. Those statutes provide damages to a prevailing plaintiff. The remedies under the ADA are the same as provided in Title VII.  The enforcement provision of the ADA, 42 U.S.C. § 12117, specifically provides for the same recovery in ADA actions as in Title VII actions: "The powers, remedies and procedures set forth in . . . [42

---

[1] Ms. Kassel seeks all available remedies under the ADA and PHRA, including all equitable remedies, back pay, emotional distress damages, punitive damages, and attorneys' fees and costs. In this brief, Ms. Kassel will address *only* the issues related to back pay (back pay accrual post layoff) and tuition remission – because these are the two issues addressed during the Pre-Trial Conference as potential points of contention between the parties.

Ms. Kassel does not include detailed case law regarding her right to emotional distress or punitive damages, or attorneys' fees and costs because the undersigned does not believe whether those damages are permitted to be sought under the ADA or PHRA is at issue or disputed (while understanding of course the actual *existence or value* of those damages would be disputed by Defendant). If the Court does seek additional briefing on these damages, Ms. Kassel respectfully requests the ability to supplement this briefing.

U.S.C. § 2000e-5, the Title VII remedies provision] shall be the powers, remedies and procedures this title provides to . . . any person alleging discrimination on the basis of disability in violation of any provision of this Act . . . concerning employment."

Title VII authorizes a back pay award as a remedy for intentional discrimination. 42 U.S.C. § 2000e-5(g)(1). *See Loeffler v. Frank,* 486 U.S. 549, 558 (1988) (the back pay award authorized by Title VII "is a manifestation of Congress' intent to make persons whole for injuries suffered through past discrimination."). Title VII provides a presumption in favor of a back pay award once liability has been found. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975).

The PHRA explicitly permits a prevailing plaintiff to recover back pay, reinstatement, and any other legal or equitable relief as the court deems appropriate:

> **(3)** If the court finds that the respondent has engaged in or is engaging in an unlawful discriminatory practice charged in the complaint, the court **shall** enjoin the respondent from engaging in such unlawful discriminatory practice **and order** affirmative action which may include, but is not limited to, **reinstatement** or hiring of employes, **granting of back pay, or any other legal or equitable relief as the court deems appropriate**. Back pay liability shall not accrue from a date more than three years prior to the filing of a complaint charging violations of this act.

43 Pa. Stat. Ann. § 962.

Once a plaintiff establishes that unlawful discrimination caused his loss, she is entitled to back pay. *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 417-18 (1975) (holding that back pay should be denied only in unusual circumstances where the award would frustrate the statutory purpose of eradicating discrimination and making victims whole). Back pay is generally awarded from the occurrence of the alleged discrimination until the harm suffered by the plaintiff is redressed. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1136 (9th Cir. 1986). Typically, the back-pay accrual period ends on either the date that judgment is rendered or the date that the jury returns its verdict.

2

**A.**    ***Backpay and Continued Accrual After Layoff***

Ms. Kassel seeks back pay in this matter. She was paid a base salary of $65,000.00 with 401(k) matching and benefits. Ms. Kassel obtained subsequent employment on September 27, 2021 initially earning less than with Defendant. Her backpay (as to base salary) accrued to $12,321.43 between July 20, 2021 through September 27, 2021. Between September 27, 2021 and September 1, 2022, Ms. Kassel's backpay accrued by an additional $8,381.87 in base salary Ms. Kassel obtained a raise on September 1, 2022, and began earning $65,000.00 per year.

Unfortunately, Ms. Kassel was laid off from a position on February 13, 2024. Therefore, **her backpay began to accrue at 100% again**, until she found new employment on June 15, 2024. *See Brooks v. NVK Logistics, Inc.*, No. 1:23-CV-1556, 2025 U.S. Dist. LEXIS 5719, at *12 (M.D. Pa. Jan. 13, 2025)(deciding backpay begins to accrue again following a plaintiff's layoff from a subsequent job, even when having 'fully mitigated' prior to lay off); *see also International Bhd. of Teamsters v. United States,* 431 U.S. 324, 372, 97 S.Ct. 1843, 1873, 52 L.Ed.2d 396 (1977); *see also Rodriguez v. Taylor,* 569 F.2d 1231, 1238 (3d Cir.1977) ("Trial courts and the parties themselves invariably lack perfect insight to forecast what would have happened had there been no unlawful acts."), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *cf. Blum v. Witco Chemical Corp.,*829 F.2d 367, 375 (3d Cir.1987) (rejecting argument that speculative nature of future damages is a reason for denying such awards). "The risk of lack of certainty with respect to projections of lost income must be borne by the wrongdoer, not the victim," *Goss v. Exxon Office Sys. Co.,* 747 F.2d 885, 889 (3d Cir.1984); therefore "[a]ny ambiguity in what the claimant would have received but for discrimination should be resolved against the discriminating employer," *Rasimas v. Michigan Dep't of Mental Health,* 714 F.2d 614, 628 (6th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984); *see also McKenzie v. Sawyer,* 684

F.2d 62, 77 (D.C.Cir.1982) (all doubts in calculating damages "are to be resolved against the proven discriminator rather than the innocent employee"); *EEOC v. Blue and White Serv. Corp.,* 674 F.Supp. 1579, 1580 (D.Minn.1987) ("[D]oubts about plaintiff's entitlement to back pay and its amount should be resolved against the employer"); *Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 156 (3d Cir. 1999); *Mason v. Association For Independent Growth,* 817 F.Supp. 550, 555 (E.D.Pa. 1993); *see also Motter v. Everest & Jennings, Inc.,* 883 F.2d 1223, 1230 (3d Cir. 1989).

Ms. Kassel calculates the additional backpay during this period of layoff as $21,964.29 (as to base salary).

### B.    Tuition As Equitable Remedy

Additionally, Defendant provides employees with an additional benefit of a 100% discount on tuition for self or children. Villanova refers to this as "tuition remission," and this benefit is outlined on Villanova's website. *See* https://www1.villanova.edu/university/human-resources/benefits/tuition-assistance.html (last visited August 15, 2025).

This benefit was available to Ms. Kassel while employed by Defendant. Ms. Kassel has two children who certainly would have taken advantage of this benefit had she not been unlawfully terminated. The current tuition at Villanova University is $69,846.00/year.

Tuition remission is an equitable benefit a plaintiff may seek under the ADA and PHRA. *See Salvatore v. Viking Sport Cruisers, Inc*, No. 09-4817 (NLH/KMW), 2012 U.S. Dist. LEXIS 199492, at *6 (D.N.J. Sep. 17, 2012) ("Plaintiff may offer evidence at trial regarding the loss of the college tuition benefit because it is within the province of the jury to decide whether there is sufficient proof to award damages for this lost benefit, and any danger regarding the speculative nature of these damages may be cured by a thorough instruction to the jury and possible remittitur

of any jury award the Court concludes is not supported by the evidence at trial"); *see also Herx v. Diocese of Fort Wayne-South Bend, Inc.*, No. 1:12-CV-122 RLM, 2015 U.S. Dist. LEXIS 28224, at *18 (N.D. Ind. Mar. 9, 2015)(upholding jury verdict awarding plaintiff mother the value of the loss of tuition benefit for her child); *see also Vermeer v. Univ. of Del.*, 710 F. Supp. 3d 401, 424 (D. Del. 2024)("Defendant is incorrect in arguing that Plaintiff cannot recover tuition benefits as a matter of law.").

The loss value of tuition remission is currently calculated at a loss of ~$279,384.00 per child for a total of **$558,768.00**.

### C. Conclusion

Based upon the foregoing, Ms. Kassel respectfully requests that this Court permit her to seek back pay for the period of time following her February 13, 2024 lay off until she found subsequent employment on June 15, 2024 as well as permit her to seek the benefit of the value of lost tuition remission at trial.

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Allison A. Barker*
Allison A. Barker, Esq.
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801 Phone
*Attorneys for Plaintiff*

Dated: August 15, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**LAUREN KASSEL**

*Plaintiff,*

vs.

**VILLANOVA UNIVERSITY
d/b/a The Inn at Villanova**

*Defendant.*

CIVIL ACTION

NO. 2:22-cv-05044-NIQA

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the date set forth below I served the Defendant with Plaintiff's Memorandum Regarding Damages via ECF filing to all counsel of record.

*/s/ Allison A. Barker*
Allison A. Barker, Esq.

Dated: August 15, 2025